```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| Jana Wasmer, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:05-cv-0986 |
| Ohio Department of Rehabilitation and Correction, et al., | : | JUDGE WATSON |
| | : | |
| Defendants. | : | |

ORDER

In this employment discrimination case, an issue has arisen concerning the ability of counsel for plaintiff, Jana Wasmer, to interview an ODRC employee, Captain Diane Eaches. The matter was discussed during a telephone conversation, following which each party was given the opportunity to file a memorandum on the question of whether such an ex parte interview was permitted by the applicable ethical rules. Those memoranda (documents #34, #35, & #36) have now been filed. For the following reasons, the Court concludes that Ms. Wasmer's counsel may interview Captain Eaches without violating Rule 4.2 of the Ohio Rules of Professional Conduct.

I.

There are only a few facts important to the Court's decision. Although the parties have not created an independent factual record concerning the motion, the following facts appear to be undisputed. Ms. Wasmer's complaint alleges that she was passed over for promotion in February, 2003 in favor of a less-qualified male officer. She also asserts that she was subjected to sexual harassment in the workplace. In 2003, Captain Eaches

was also a lieutenant at the Ohio Reformatory for Women and a candidate for the same promotion.  Ms. Eaches was subsequently promoted to the rank of captain.

According to the ODRC, although a captain is not the highest-ranking administrative official at a state prison (presumably that responsibility falls to the warden), a captain is responsible for operations at the institution during his or her shift.  They supervise all lower level supervisors and corrections staff and are therefore managerial employees.  They have occasion both to contact and to obtain direction from in-house legal counsel.

Because then-Lieutenant Eaches was not a decision-making official responsible for promotions to the rank of captain in 2003, it does not appear that she was involved in the facts and circumstances underlying Ms. Wasmer's discrimination claim other than as a potential witness.  However, Ms. Wasmer also claims that other promotions after that date, and perhaps other actions taken within the ORW, are evidence of both discrimination and sexual harassment.  According to defendants, Captain Eaches may have participated in some way in the decision-making process with respect to those promotions and she may have been a shift commander while some claimed act of sexual harassment took place, although there is no evidence to support a direct connection either between any action of Captain Eaches and any promotion decision at issue in this case or any alleged act of sexual harassment.  It is with these facts in mind that the current matter will be resolved.

II.

Effective February 1, 2007, Ohio adopted new ethical rules, replacing the prior Code of Professional Responsibility with the Ohio Rules of Professional Conduct.  Although these rules are new to Ohio, they are either identical to or adapted from the

2

American Bar Association Model Rules of Professional Conduct and similar rules have been in effect in other jurisdictions for some period of time.  The Court's analysis of the reach of Rule 4.2 will necessarily depend upon persuasive decisions from other jurisdictions because the Ohio courts have not yet had an opportunity to interpret that rule.

The Rules of Professional Conduct are somewhat similar in structure to the Code of Professional Responsibility in that they contain both mandatory rules of conduct and explanatory materials such as comments and comparisons.  Clearly, any analysis of the rule relating to communication with persons represented by counsel (Rule 4.2) should start with the text of the rule itself.

Rule 4.2 consists of a single sentence:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

This language does not directly address the oft-debated question of which persons employed by an organizational party fall within the scope of the prohibition against ex parte communication.  Comment [7] to Rule 4.2 is designed to flesh out this issue.  It states that the rule "prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter" or a constituent who "has authority to obligate the organization with respect to the matter."  Finally, constituents (presumably employees) "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability" also may not be contacted by opposing counsel.  Comment [6] allows a lawyer who is uncertain about whether a specific communication would violate Rule 4.2 to seek a

court order clarifying his or her professional obligations. Finally, the comparison note relating to the Ohio Code of Professional Responsibility indicates that Rule 4.2 is analogous to DR 7-104(A)(1).

    As an initial matter, the Court notes that there may be some question about the binding nature of Comment [7]. Although Comment [7] appears to have been approved by the Ohio Supreme Court, in contrast to portions of some rules and comments proposed by the ABA which were designated as [RESERVED], that does not necessarily mean that the Ohio Supreme Court would give the comment the force of a rule. Courts in a number of other jurisdictions have concluded that it is the text of the rule itself rather than the comment which controls and which provides the ultimate guidance to courts seeking to determine the scope of the prohibition set forth in Rule 4.2. See, e.g., Palmer v. Pioneer and Associates, 338 F.3d 981 (9th Cir. 2003) (discussing Nevada law which provides that the text of the rule is authoritative and the comments are merely guides to interpretation); see also Jones v. Robanco, Ltd., 2006 WL 2401270 (W.D. Wash. August 18, 2006) (discussing Washington law). In the absence of any guidance from the Ohio courts, however, this Court will presume that Comment [7] will be deemed persuasive if not authoritative on the issue of which contacts with representatives of organizational parties are prohibited and which are permitted.

    The first category of persons with whom ex parte contact may not be made are those who supervise, direct, or regularly consult with the organization's counsel "concerning the matter...." It seems clear from the text of Rule 4.2 that the "matter" to which Comment [7] refers is the subject about which counsel who seek to conduct the ex parte interview represent their own client. In this case, therefore, the "matter" at issue consists of Ms. Wasmer's claims of discrimination and sexual harassment and the

litigation which has arisen out of those claims.  ODRC has neither alleged or provided any evidence that Captain Eaches supervises, directs, or regularly consults with ODRC's counsel concerning this case or Ms. Wasmer's claims.  The assertion that, as a shift supervisor or captain, she has occasion at times to consult with ODRC's in-house counsel about matters relating to her job duties is not the same as having the responsibility to supervise, direct, or consult regularly with the counsel who are handling this litigation.  If those two concepts were equated, any organizational employee who might, for any reason, have occasion to consult with either an in-house attorney or outside counsel about anything relating to his or her job duties would fall within the prohibition.  As more fully discussed below, such a broad interpretation of Rule 4.2 is neither textually supported nor appropriate.

    The second category of persons with whom ex parte contact may not be had are those who have the authority "to obligate the organization with respect to the matter."  There is some debate about what this language means.  Some courts have suggested that it means no more than that the employee may make an admission which could be admitted in court as a non-hearsay statement under an evidentiary rule such as Fed. R. Evid. 801(b)(2).  Others have read the rule more narrowly, however, concluding that it relates only to those persons who may be able to make a decision, such as whether to institute or to settle litigation, which would bind the organization in some meaningful way even if it were not the final decision of the organization.  See, e.g., Crowley v. L.L. Bean, 143 F.Supp.2d 38 (D. Me. 2001); see also Messing, Rudavsky and Weliky v. President and Fellows of Harvard College, 436 Mass. 347 (2002).  Regardless of which interpretation is adopted, because it does not appear that Captain Eaches was a decision-maker with respect to the promotion in question and because ODRC

has submitted no evidence that she might have been involved in any way with any alleged incidents of sexual harassment, even as a shift supervisor, the Court simply cannot conclude that she is a person that has the ability to bind the ODRC in any matter related to this case.  Thus, she does not appear to fall within the second prong of Comment [7].

The last prong of Comment [7] describes an organizational employee whose acts or omissions might be grounds for imputing either criminal or civil liability to the organization.  Again, there is no evidence that any act or omission of Captain Eaches is at issue in this case.  Ms. Wasmer disclaims any intention of attaching liability to ODRC based upon any act or omission of Captain Eaches.  Without evidence supporting the proposition that such acts or omissions may have occurred, the Court cannot conclude that she falls within the purview of the third prong of Comment [7].

As the courts have consistently held, the purpose of a prohibition against ex parte communications such as that embodied in Rule 4.2 is to protect an organization from improper disclosures of attorney-client communications or untoward intrusions into the attorney-client relationship in the context of an organization's ability to prosecute or defend litigation.  It is not designed to protect an organization against the disclosure of facts which may be prejudicial to its litigation position.  <u>Jones v. Robanco</u>, *supra.*  As the <u>Messing</u> court noted, "[t]he purposes of the rule are best served when it prohibits communication with those employees closely identified with the organization in the dispute....those employees empowered to make litigation decisions, and those employees whose acts or omissions are at issue in the case."  <u>Messing</u>, 436 Mass. at 358.  Captain Eaches is not closely identified with the ODRC with respect to the matters at issue in this case, nor are any of her acts or

omissions apparently at issue.  Consequently, the Court concludes that it would not violate Rule 4.2 if Ms. Wasmer's counsel were to interview Ms. Eaches ex parte.  Of course, in doing so, they explicitly advise to Captain Eaches concerning whom they represent, the nature of Ms. Wasmer's claims, the fact that the matter is in litigation, the fact that the ODRC has counsel in the litigation, and the fact that Captain Eaches is free either to refuse to speak to them or to consult with ODRC's counsel before making that decision.  At the same time, however, they are free to advise Captain Eaches that they are not violating any ethical rules by attempting to speak with her ex parte.  Further, ODRC's counsel may not properly advise Captain Eaches that they represent her personally simply because they represent the ODRC in this litigation or that because ODRC is represented by counsel in this case, Ms. Wasmer's counsel may not properly attempt to conduct an ex parte interview.

                                III.

    ODRC devotes a substantial portion of its memorandum to the question of whether Ms. Wasmer may legitimately obtain a continuance of her obligation to respond to the summary judgment motion based upon whatever information she may glean from Captain Eaches as a result of counsel's efforts to speak with her on an ex parte basis.  In response, Ms. Wasmer notes that she has not asked for a continuance under Rule 56(f).  The Court did temporarily suspend her obligation to respond to the motion until this matter could be resolved.  Having resolved the matter, there is no basis for a further extension.  Consequently, any response to the pending summary judgment motion must be filed within twenty-one days of the date of this order.

                                IV.

    Based upon the foregoing, to the extent that the memorandum filed by Ms. Wasmer (#33, as amended by #34), is construed as a

motion, that motion is granted. Counsel may interview witness Diane Eaches concerning the matters at issue in this suit without violating Ohio Rule of Professional Conduct 4.2.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.


    /s/ Terence P. Kemp
    United States Magistrate Judge